The California Supreme Court has set forth clear guidance to insurance companies regarding exclusions. They first say that an exclusion needs to be plain, clear, and conspicuous. The second thing that they have said is that we're going to narrowly interpret exclusions that seek to take away coverage that has been granted in the insurance policy. And the third that has direct application to this case is that we're not going to, or the courts are not going to, insert terms in which the insurance company chose not to put in the policies. So what we have in this case, and before I get farther, I'd like to reserve three minutes for rebuttal. What we have in this case is Kinsale had three opportunities to exclude misleading advertisement expressly. First of all, they could have actually drafted the coverage clause, the insuring clause, so that it did not include misleading advertising. Second of all, in the exclusion itself, they could have explicitly said, as the statutes say, false or misleading advertisement is excluding. And the third thing that they could have done is they could have had a definition within the policy where defined false advertising to include, among other things, misleading advertising. So what we have in this case is an underlying complaint against Saccard Pools and the others alleging clearly false and misleading advertising. But if you look at the allegations of the underlying complaint, what they are actually alleging is a confusing similar color scheme in the advertisements that are used by Saccard Pools. A confusing similar color scheme. They're not saying that the color scheme was, in fact, false or not true because this color scheme is what it is. What they're actually saying is that it was confusingly similar. And I want to... What was the alleged advertising? We don't know. In the underlying complaint? It's not alleged in the underlying complaint. All we have is that it was... What was alleged? It was false and misleading. It's in the complaint on page 160 that they had false and misleading advertisements that had colorable imitations of or confusingly similar marks and trade dress as those used by the plaintiff in the underlying complaint. Was the advertising anything other than what was on the products themselves? It's not stated in the complaint whether it was on the products or not. What it's saying is that they used in their advertisements similar color schemes in promoting the products. So it could be on the products. I agree. But it's not entirely clear from the complaint that that was the only allegation that it was only on the products. Because I understand what the court's going on that. They're going to the third prong of the exclusion, which deals directly with the products. And if you look at the underlying complaint, they deal with the products in paragraph 157 or 158. And then in paragraphs 160 to 163, they talk about misleading and confusing advertisements. And it's not necessarily limited to just the products. It just says they use a similar color scheme. So that in and of itself is a distinguishing difference. I thought they were talking about on the products. Well, that's part of what they're alleging. There's no doubt they're talking about on the products. Right. That's the way I read the complaint. But they're also talking about similar color schemes in the advertisements themselves. But does it make any allegations of other advertisement? For example, is there any allegations that these products were advertised in some sort of pool industry-wide publication? They make allegations that the advertisements were on the Internet. They were. Do? They do. Where? Yeah, let me. Maybe when you come back, could you give us those paragraphs? Yes, I will. Maybe I missed that. I will. But go ahead. And what we have in this case is similar. I'm going to use an analogy, which I think is important in this case. What we have is, let's say an insurance policy provided coverage for jewelry. And then the exclusion says we're going to exclude diamond jewelry, which is similar to excluding false advertising. And then someone has a claim for a gold watch that doesn't have any diamonds. Then the clear reading of the exclusion would exclude the only diamond jewelry, but not the other types of jewelry, which would be gold jewelry. In Kinsale's brief, they said that the crux of their argument is that the misleading advertisement is a subset of false advertising. And they have actually backwards. Because I would agree that any advertisement that is in fact false is probably confusing and misleading. But any misleading advertisement, while it may be false, it may not be false. It may just be misleading. It just may be using a true color scheme, but not necessarily false. An analogy. Counsel, forgive me for interrupting. I agree with you. I don't know why we need to reach that at all. But it strikes me your bigger problem is this exclusion, right? There's very broad language in this exclude. Why doesn't this exclusion swallow your claim? Because it doesn't expressly exclude misleading advertisement. It doesn't state misleading advertisement. The underlying statutes distinguish false advertising from misleading advertisement. And if you look at the exclusion, prong two is the only expressly refers to advertising. And actually expressly refers to false advertising. It says actual. But it doesn't, counsel. It doesn't. Look at the residual clause. The last clause of two and three, for that matter. Correct. Or any other causes of action arising out of unfair competition. Right? Correct. The net under three, it includes the Lanham Act expressly. But I don't know why we have to parse the difference between whether misleading is a subset of false or not. What about the residual clauses in these exclusions? Well, I'm going to address the third prong first. The third prong, and it does reference the Lanham Act, but that's in conjunction with what Judge Paez was saying earlier with products itself. It has no reference to advertising. Because if it did explicitly include false advertising, then there would be no reason to have prong two. Okay. So when you come back, you're going to talk to us about what advertising, which allegations in the complaint include other advertisements. We've covered that. But now can you turn to prong two, please? Yeah. Prong two says, or other causes of action arising out of unfair competition. The false advertising is not necessarily an unfair competition cause of action. What they are referring to is a different type of conduct. And in fact, in the complaint, there's different allegations for unfair competition versus false or misleading advertising. So independent of what that broad statement says out of unfair competition, you cannot eliminate what it earlier says when it seeks to exclude false advertising and thereby by not saying misleading advertising. Counselor? Yes. Let me ask you this. When Kinsale got the notice of suit and the suit against your company by Solar Sun Rings, okay? Correct. When they got the notice of suit. In that suit, there were, I believe, seven claims. Correct. All right. Now, it doesn't seem to me that any of those claims allege anything about misleading advertising. So your dispute here and what you're claiming is that they wrongly denied you coverage. Correct. But if there's no claim for anything involving misleading advertising, why isn't the insurance company correct? A couple reasons. First of all, the case of Atlantic Mutual versus Lamb says we don't look at the labels of the cause of action. So the fact that the cause of action may be labeled false advertising is not conclusive determinative of whether or not there is actually a duty to defend. But if you look at paragraphs 160, 161, 162, and 163, they are clearly alleging false and misleading advertising. So false, an advertisement certainly could be false and that would fall within the exclusion, but they're also alleging the alternative of misleading advertising, which would not fall within the gambit of the exclusion. So the fact that the label is false advertising, the actual allegations in the complaint of colorable imitations or confusingly similar marks and trade dress, that in and of itself is a misleading advertisement. But the language in the policy says that the policy does not apply to any claim or suit arising out of any and then the three prongs. Correct. That arising out language is pretty broad, is it not? Well, arising out is broad in terms of a coverage clause. In terms of an exclusion, it's more narrowly interpreted. What case do you rely on for that? I thought the rising out of is more of a causation kind of standard. The answer to your question is State Farm Mutual Auto Insurance v. Partridge, 10 Cal 3rd, 94. It says when the phrase arising out of is stated in an exclusion as opposed to the coverage provision, it is interpreted narrowly against the insured. So how do we interpret it narrowly against the insured here? How does that principle work with this exclusionary language? The way the principle works is that if indeed Kinsella wanted to exclude allegations of misleading advertisement, they needed to state that either in exclusion or by way of a definition. I don't quite see the connection between that argument you just made and the point you made just a moment ago, which is that you construe arising out of narrowly. So how do we construe it narrowly and read it into the exclusion? How would I read the exclusion with this narrow interpretation that you're suggesting applies to the term arising out of? That it would only apply to those terms that are specifically used in the exclusion, which would be false advertising, false designation of origin, product disparage, trade libel, or other causes of action arising out of. So unless it specifically says misleading in the exclusion, the exclusion doesn't apply. Correct. All right. You've got a minute and 43 seconds. I want you to tell me where in the complaint, why don't you take a look at the complaint. I will. The underlying complaint and where it suggests that the complaint alleged advertising in some manner other than on the product. You pointed us to paragraph 160, and it suggests that the advertising there was coming from the product. Okay. Thank you. We'll hear from the other side. Good morning, Your Honors. My name is Matthew Heafey. I'm from Nemesek and Cole in Encino, California. We represent Kinsale, who is the appellee in this matter. I think the court was spot on in its inquiry about the words arising out of in this exclusion, and I think that that is actually the dispositive issue here. Respectfully to other counsel, the State Farm case doesn't really mean that the words arising out of are always going to be interpreted in a narrow fashion because State Farm actually held something different. State Farm dealt with the concept of concurrent causation with two different particular causes of a loss converging to create the same bodily injury. And what happened in State Farm was the insured had purchased a gun, and he sawed off a little portion of the triggering mechanism on the gun to create a hair-trigger type situation, put the gun in the car, and transported the gun to a different location. And unfortunately, the bumpiness of the road was one of the causes that caused that gun to go off and create a bodily injury type situation. State Farm correctly conceded coverage under its automobile policy, which had an insuring agreement that said we're going to cover claims arising out of the use of an automobile. But State Farm also had issued a homeowner's policy to the same insured. State Farm said, well, if my auto policy covers arising out of an auto, and if I have an exclusion in my homeowner's policy that says it doesn't cover arising out of an auto, then this insured shouldn't get coverage under both policies. The California Supreme Court said, no, that's not the way it works. And the reason is is because insuring clauses are supposed to be interpreted broadly, and exclusionary clauses are supposed to be interpreted narrowly. It's basically a throwaway in the Supreme Court decision where they mention the words arising out of, because that wasn't dispositive of the issue. The disposition of the issue was whether it appears in an insuring agreement or an exclusionary clause. And I think that's a key distinction that isn't even addressed by counsel, either in his papers or in the oral argument. And, in fact, it's been held by the Ninth Circuit under three different cases. That's underwriters of London v. Cordova, it's 283 F. Second, 659. Continental Casualty, 763 F. Second, 1076. And most recently in 2017, rule was reaffirmed in L.A. Lakers v. Federal Insurance Company at 869 F. Third, 795. All those cases hold specifically with regard to an exclusion that the words arising out of are supposed to be given their normal meaning, which is a broad, supposed to expand to the meaning of an exclusion, not contract it. So I submit to the court that if the court were to accept the appellant's position, it would fly in the face of Civil Code Section 1641, which says the whole of a contract is to be read together so as to give effect to every part of it, if reasonably practical. And each clause has to help interpret the other. You can't read the words arising out of this exclusion out of the exclusion. I think the L.A. Lakers case, which came out last year, is particularly important for the court to consider and in fact is binding on this court as to the Ninth Circuit's interpretation of what California law is. And in fact, the L.A. Lakers case dealt with a TCPA claim in which there's no mention of the word invasion of privacy in the statute. And the insurance company said, well, I've got an exclusion in my policy that excludes coverage for invasion of privacy, but also excludes coverage for claims arising out of invasion of privacy. And the court basically held that the gravamen of a TCPA claim is in fact invasion of privacy. What happens when you get called by a robocall on your cell phone in the middle of a meeting? You're invading somebody's privacy when you're doing that. Okay, so let's go through the exclusionary clause. Let's go through the IP exclusion. And it seems like this case really boils down to Claim 3 in his complaint. You mean the third prong of the exclusion, whether or not it... No, this third cause of action, I guess, the misleading. Right. The misleading allegation. Well, Your Honor... So he says, well, misleading advertising is not mentioned in this exclusion. It's not mentioned in the exclusion. That's true, Your Honor. Okay. Except the exclusion itself says this insurance does not apply to any claim or suit arising out of any actual or alleged false advertising, false designation of origin, product disparagement, trade libel, or other causes of action arising out of unfair competition. So it's got the catch-all for other causes of action arising out of unfair competition, which should cover it. But it also has the catch-all of arising out of false advertising. And so I think that if the court is going to go in that... So misleading could be false advertising? Absolutely. That's the way the statute reads, Your Honor. And in fact... Do we have to reach that? I thought that was a curious argument. Why are you making that argument that misleading has to be a subset? Why are you making that argument? Is it necessary? I think it's an alternative argument, Your Honor. I think that the court can stop at the words arising out of, because the plain meaning of the exclusion captures both false and misleading advertising. The penumbra of that claim, what is a false advertising claim, includes a misleading advertising claim. And that's apparent in the American Home Products case, which is 577 F SUP 160. That's the common law interpretation of the Lanham Act before 1989, in which the court held, yeah, a claim for false advertising under the Lanham Act includes misleading advertising. That's what the common law was before 1989. And then the McCarthy Treatise, which is cited at page 54 of our brief, shows that, yes, in 1989, Congress recognized that that's what the common law was. And so they added the word misleading to the statute under the Lanham Act. Right. And that's why this argument strikes me as curious, because I don't mean to split hairs, but it seems to me one of his stronger points. You know, we construe this narrowly. It's an exclusion. And we all know that the Lanham Act makes a distinction between false and misleading. Your exclusion does not. You have another exclusion. You have residual clause, to be sure, within this exclusion that's very broad and unlimited. But it just strikes me that this is actually an argument that he's advancing. Well, I think, though, to get to that argument, Your Honor, first you have to establish that there are two reasonable interpretations of this exclusion. Right. So the way that the analysis goes is that you have to show two reasonable interpretations, and then you have to show evidence of the reasonable expectations of the insured. And in this circumstance, I submit to the Court that the plain meaning of the policy is arising out of. You can stop there. You never have to get to the ambiguity analysis. But if the Court were to get to the ambiguity analysis, then you would have to say, well, geez, is this interpretation reasonable? And what I'm suggesting is, is the interpretation is not reasonable to say that there should be a subset or a different type of tort claim for misleading advertising as opposed to false advertising. I think that's the distinction. It's the distinction that's made in the case law. It's the distinction that's made in the Lanham Act. Both types of claims are right there. They are false advertising in my world is a term of art. And coverage B, which is for personal advertising injury. How does prong three fit into your decision? Well, prong three also fits directly in because prong three says we don't cover any claims. Of false advertising. Of false advertising, but anything arising out of the Lanham Act. So all of these claims. Could be false or misleading. Could be false or misleading because there's a specific reference to the Lanham Act in prong three. Right. On products, goods sold, manufactured, handled, distributed, or ordered. Right. And so that would cover it regardless. And I think that the argument that counsel is making is that, well, there's no word advertisement in that prong three. It only says arising out of the products. But I think as the court correctly pointed out before, the underlying complaint has absolutely no allegation of anything to do with advertising other than the products themselves. And of course. It's paragraph 160 and 163, right?  Those are the paragraphs. And it talks about false and misleading advertisements, promotions, and sales in 163. That's correct, Your Honor. There's no allegation anywhere that anything but the products are depicted in these quote unquote advertisements. And I think the court asked earlier whether there was depictions on the Internet. I didn't find anything in the complaint that said that there were depictions of these products on the Internet. But you're at the duty to defend. I mean, you got this complaint and three days you turned this around so we have no duty to defend. Isn't there enough in 160 to 163 to at least say that, you know, there's a duty? Well, Your Honor, roll back to the arising out of language in the IP exclusion, which covers all three prongs. And it says claims arising out of any of these things that are listed in the IP exclusion. And I think that's really key. That's a really key thing for the court to focus on. Obviously, you wrote that exclusion. You could have written it more broadly. Now, your argument is you don't need to write it more broadly. But, I mean, it's really a question of you're going to provide a defense here. That's what this suit's all about. Well, true, Your Honor, except for the fact that you have to look at the way coverage B, which is personal and advertising injury, is actually defined, okay? And the way that coverage B is defined is a list of enumerated offenses. The enumerated offenses in coverage B are things like false arrest, malicious prosecution, wrongful eviction, libel, slander, violation of the right to privacy, and use of another's advertising idea in an advertisement. So that's the way the coverage is actually defined. Nowhere in the coverage definitions does anyone ever require that you lay out all the elements of each particular type of tort. And if you did, I mean, the policy would be 45 pages longer. I mean, it would be crazy to have to require an insurance company to lay out each individual element of each individual tort. So what we're trying to argue in the appellee's brief is, is that, hey, we think that the term false advertisement is something that a layperson would know. They would know that false advertisement includes these claims under the Lanham Act, includes the California version, which I think is Business and Professions Code 17500, and it includes false advertisement under the common law. And you have to read this the way that a layperson would read it, right? A layperson looking at an exclusion and it doesn't see the word misleading would think, oh, this exclusion doesn't apply to misleading. Well, but, Your Honor, take a look at the exclusion itself. It not only says false advertising, but also lists a number of different related torts, and that's arising out of actual or alleged false advertising, false designation of origin, product disparagement, trade libel, or other causes of action arising out of unfair competition. And my point there being that it goes to the reasonable expectations doctrine, right? Because even if you say that there's no plain meaning of this exclusion, even if you get to two different reasonable interpretations, there still has to be evidence that's presented to the court, and there has been no evidence at all in this case of the reasonable expectations of the insured. Now, I submit to the court that, yes, that is an objective standard for the court to determine, but how does the court determine that? The only way the court determines the objective reasonable expectations of coverage on behalf of the insured is to look at the insurance policy. Otherwise, that rule would have absolutely no meaning whatsoever. I think that the- Can I ask you a question about that, counsel? Forgive me for interrupting. Can I ask you a question about that? If I were a Joe consumer, just a layperson, and I looked at this coverage and then the exclusion, what would I understand is covered by this policy? Things like disparagement. Like, so, for example, I advertise a good that disparages another good. I think that that might fall outside of the exclusion, of the IP exclusion. So there is some coverage here. That's not unfair competition? Well, it might fall within the penumbra of unfair competition. And, in fact, there was a case that I recently argued to the central district, and the central district did find that it falls within unfair competition. But there are other- Right. So what's left? So what's left? I'm trying to figure out why I have this coverage provision. Presumably, it covers something. What's a layperson supposed to understand? But, Your Honor, under the Winterthur-Swiss case, insurance companies are allowed to accept the risk that they want to write under their insurance policies. There's no prohibition in completely getting rid of, you know, the insuring agreement in a particular aspect of the insurance policy. And I think- Well, but presumably a layperson looking at this understands that they're paying a premium for something, and this coverage provision covers something. So it is difficult for me if you can't identify something that actually escapes the exclusion. Well, the example that I gave is disparagement. Or, more precisely, defamation. I understood that you just told me that you argued the opposite in a different case on disparagement. I think disparagement is different than defamation, right? Because disparagement is disparaging a product. Defamation is disparaging a business or a person. And I think that you could have a defamatory claim in an advertisement that would fall within the coverage both under 14- I think it's 14G and also the express coverage for defamation under the insurance policy. That would be an example of something in an advertisement that would be- that would fall outside of the IP exclusion. Because the IP exclusion only deals with disparagement, not defamation. And under the LAM case, defamation is different than disparagement. So you'd have to have an advertisement that disparages another competitor in the marketplace in order to be covered. Is that right? No. I don't think- because the exclusion applies to disparagement. The exclusion does not apply to defamation. Oh, forgive me. I misspoke. I meant defamation. Forgive me. Correct. Is that your answer? That's my answer is an example of something that would be covered but isn't covered- but isn't excluded under the IP exclusion. Okay. Okay. Thank you, Counsel. We appreciate your argument. Thank you, Your Honor. Let's hear from the other side. Thank you, Your Honor. If you look at the complaint, paragraph 61 alleges- and this is the plaintiff in the underlying case. Let me get page 61. Correct. This is the underlying complaint. It's paragraph 61. Of the appellant's record, it's 393. Okay. I'm almost there. 61. Got it. 61, the trademarks in conjunction with the color scheme are also prominently featured in advertisements that appear in internationally distributed materials. And then the next paragraph, 62. They spent a considerable amount of money annually on such advertisements. 63. In addition, on displays and advertising efforts, the solar sun rings and squares trademarks in conjunction with the color scheme and featured in the sale of all products on third-party websites and retailers. And then if you look at some of the factual allegations against Sakaar Pools, you look at paragraph 80. They talk about products in the same channels of trade are marketed to the same group of consumers and often found side-by-side in the marketplace. That's an advertising injury under the policy. Marketing is an advertising injury. Then if you look at, more importantly, paragraph 86, which says, plaintiffs in the form of lease and their own alleges that defendants intentionally adopted an identical set of sequence of colors as SSR's color scheme to trade and infringe. So it's the color scheme, the marketing, the promotion. You look at paragraph 8. They're talking about contacting various different retailers for the promotion and marketing of such infringing products. So that's all advertising injury, and they're using the advertising injury. SSR talks about their advertising worldwide. That is the advertising injury because now the color schemes that are being used that are misleading, not false, but misleading, are infringing on the advertising of SSR, which is alleged to be internationally distributed and done on the Internet. So then your argument would be, taking the allegations you just pointed out to me or to the court, your position would then be that exclusion, prong three of the IP exclusion is of no help to Kinslow. Correct. So if the exclusion is going to work, it has to be under prong two? Correct. And the reason it doesn't work on prong three because you can't look at the last part of the exclusion because it says including violations without looking at the beginning part of the exclusion, which talks about products are good, manufactured, sold, handling, or distributed. So the products are one thing. The advertisement is prong two. If the argument is that the reference to Lanham Act in prong three consumes advertising too, then Kinslow would have no reason to put prong two in there. They put prong two in there because that was the part of the exclusion that was referring to advertisement. Judge Christen pointed out earlier that there is a residual clause in prong two or other causes of action arising out of unfair competition. Why isn't misleading advertising covered by that? Because misleading advertisement, if you look at the allegations of the underlying complaint, misleading advertisement, there's an allegation for paragraph 165 talks about unfairly competed. But there's also separate allegations if you look at paragraphs 165, 167, 168, that are not necessarily unfair competition. So you do have the broad statement. Let's see. 168 talks about defendants knew or should have known or by the exercise of reasonable care should have known that their adoption and or use in commerce of a trademark and trade dress that are entirely similar to SSR's trademarks and trade dress would cause confusion, mistake, and deception among consumers. Why isn't that all part of unfair competition? I don't understand. Because what it requires a consumer, and the standard is not, and you're not going to get any evidence of what one insurer's interpretation of policy is, is what would an objective policyholder reading this exclusion think? And they would not think that, they would think that while false advertising was excluded because it's expressly named, what they were carving out of the exclusion was misleading advertisement because they did not expressly state that. So they can't have a catch-all phrase at the very end of the exclusion to now incorporate terms that were not incorporated earlier in the exclusion. So the end of the exclusion where it talks about unfair competition has to be interpreted in connection with the same prong of false advertisement. It can't be interpreted independently. I don't see any other questions. Thank you. Thank you, counsel. Thank you, counsel. The matter is submitted and that ends our session for today. Thank you all very much.
judges: Fisher, Paez, Christen